## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

_____

MARC GOODELL,
PHILIP POWERS,
CHAD WERTH,
ROSS BLAKLEY,
DOMINICK P. TUCKER,
JUSTIN ROSE, and
KYLE CRAWFORD,
on behalf of themselves and a class
of employees and/or former employees
similarly situated,

Plaintiffs,

v.                                                    Case No. 08-cv-512-C

CHARTER COMMUNICATIONS, LLC,
and
CHARTER COMMUNICATIONS, INC.

Defendants.

_____

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION
## FOR CLASS COUNSEL'S COSTS AND ATTORNEYS' FEES

_____

### INTRODUCTION

Class Counsel have filed their petition for an award of attorneys' fees and costs requesting thirty percent (30%) of the $18 million common fund or a total $5.4 million. Class Counsel's request is supported by controlling Seventh Circuit precedent which makes it clear that, in common fund cases, district courts should award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time. *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007). Here, Class Counsel seeks to recover a fee that it would have recovered if they

had handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. *Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566, 572 (9th Cir. 1992). In support of this request, Class Counsel has provided the Court with the legal and factual basis for their petition. Class Counsel has provided affidavits from Class Counsel and area practitioners supporting Plaintiffs' fee request as being consistent with the market rate in Madison, Wisconsin for wage and hour collective and class action litigation. In contrast, Defendants have provided no affidavits from area practitioners challenging Class Counsel's affidavits. Defendants have provided no authority to contradict Class Counsel's assertion that thirty percent (30%) is a reasonable rate given the normal market rate and the risk of nonpayment. Accordingly, Class Counsel's affidavits are uncontroverted and, for purposes of this motion, it is undisputed that 30% is the reasonable, prevailing market rate for Class Counsel's services in this case, which is further supported by the fact that Class Counsel entered into fee contracts with all seven class representatives for at least a 30% contingent fee.

Notably, Defendants have provided no legal authority whatsoever to contradict Class Counsel's assertion that the Seventh Circuit's preference, in this type of case, is to award a percentage of the common fund based upon the market approach. The Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001); *see also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). Throughout these cases, the Seventh Circuit recognizes that "most suits for damages in this country are handled on

the plaintiff's side on a contingent –fee basis." *Gaskill* at 160 F.3d at 362.   Accordingly, the appropriate measure of Class Counsel's entitlement to attorneys' fees in the instant case is to identify the percentage of the overall recovery that best accommodates these factors.   In accordance with these principles, Class Counsel has provided considerable, unrefuted evidence which demonstrates that 30% mirrors the prevailing market rate for a case like this under these circumstances.

Defendants offer no evidence or authority to explain why this Court should disregard the Seventh Circuit's preference for a market-based analysis and, instead, ask the Court to conduct an informal "audit" of Class Counsel's billing practices.   In this respect, Defendants' primary argument is that Class Counsel's request for attorneys' fees and costs in the amount of $5.4 million is excessive.   Defense counsel, based on their billing records, billed $7.4 million in attorneys' fees and costs in this case[1].   While Defendants accuse Class Counsel of "rampant inefficiencies" by spending approximately 5,000 hours in successfully litigating this case, Defendants' counsel spent over 20,000 hours litigating the same case. Defense Counsel also claims that 83% of the written discovery requests in *Goodell* were duplicative of those propounded in the *Sjoblom* case. Over 1 million pages of documents were produced in *Sjoblom* in response to written discovery.   In contrast, Defendants did not produce a single document in *Goodell* in response to written discovery.   It is certainly curious for Defendants to accuse Class

---

[1] The Hogan firm's billing records indicate that, although they billed $5,936,958.65 in fees, they provided a discount to Charter in the amount of $308,959.33.

3

Counsel of rampant inefficiencies where defense counsel billed $5.4 million to respond to discovery, without producing a single document.

Defendants further claim that this case is essentially identical to the *Sjoblom* case[2] and therefore contend that minimal work was necessary for Class Counsel to litigate the case.  If these two cases are, in fact, the same as Defendants now claim, there would be no reason for Defendants' lawyers to have spent more than 20,000 hours and incurred $7.4 million in fees and costs in defending the case.  Moreover, Defendants' current contention that the two cases are essentially identical is contrary to representations made by Defendants' counsel to the Court and opposing counsel in the *Goodell* litigation, an example of which is included in the parties Joint Preliminary Pretrial Report, which is filed with the Court:

> Defendants contend that the *Sjoblom* matter is not related to the present matter, since this case involves an entirely different group of employees, involves claims brought only under the state laws of eighteen states, none of which was at issue in *Sjoblom* and there is no federal claim in the First Amended Complaint, as there was in *Sjoblom*.  The legal issues, factual issues and scope of appropriate discovery therefore are entirely different.

(Joint Report, Dkt #9).  The Court should judicially estop Defendants from representing facts to the Court (and Class Counsel) in exactly opposite ways in order to obtain particular results that advance their purposes.

Throughout Defendants' response brief, Defendants claim that the requested fees should be reduced in order to maximize recovery for class members.  Defendants' claim of concern for the interests of class members is patently disingenuous.  Charter has one

---

[2]  *Sjoblom v. Charter Communications, LLC et al.* (Case No. 3:07-cv-00451-bbc)

interest in contesting Plaintiffs' fee request —minimizing its payments under the Settlement Agreement.  Under the reversion provision in the Settlement Agreement, 85 cents of each dollar that is not claimed by class members is returned to Charter. Accordingly, 85 cents of each dollar not paid in fees or costs is available for a potential return to Charter.  Charter's feigned concern for the financial interests of its current and former employees is belied by its failure to properly pay wages and overtime to those same employees, which resulted in the *Sjoblom* and *Goodell* lawsuits in the first place.

Charter also claims that Class Counsel should have known that the *Goodell* case would settle, given the fact the *Sjoblom* case settled.  Class Counsel could not pursue a class action lawsuit against the third largest cable provider in the country, represented by one of the largest employment law firms in the world, assuming that the case would settle.  Defense Counsel aggressively defended this action, as they are obligated to do. Class Counsel was also under a duty to provide zealous representation for the class members.  In order to do so, Class Counsel spent thousands of hours prosecuting this case in order to advance the interests of the class, comply with this Court's docket demands, and provide the best protection possible to the class as it navigated through Charter's bankruptcy proceedings. There was no reason to believe a settlement was likely.  If Class Counsel had prosecuted this case simply hoping that it would settle; less hours would have been put into it; the case would not have been postured properly; settlement would have been unlikely; and Class Counsel would have been guilty of not adequately representing the class.  Additionally, if Class Counsel should have known the case would settle, defense counsel should have also been aware that settlement was imminent.  The fact that Defendants' counsel billed Charter over $7 million in fees and costs in defending

this action certainly suggests that there was no pre-conceived plan by Charter to settle this matter.

Similarly, Defense Counsel states that the impending bankruptcy that loomed over Charter when plaintiffs commenced this case did not pose any risk of non-payment. (Response at 2, 27-28).  Defendants argue this is so because Charter filed for Chapter 11 and not Chapter 7, therefore signifying it had sufficient funds to pay a large settlement. (Response at 28).  It is easy, of course, for Defense Counsel, who were guaranteed to be paid by the hour, to now claim that there was no risk of nonpayment for Plaintiffs' Counsel, who took on a contingent fee against a defendant that was likely to file for bankruptcy.  It is ridiculous to suggest that the type of bankruptcy filing (Chapter 11) eliminated the risk of nonpayment for Class Counsel while simultaneously acknowledging that such risk must be measured at the inception of the lawsuit. Obviously, at the inception of the lawsuit, the type of bankruptcy was unknown since it had not yet been filed.  However, there were frequent reports in the media which suggested that Charter was likely to file for bankruptcy.

Class Counsel's request for attorneys' fees and costs, as set forth in their petition, is fully supported by the law, the facts, the supporting and uncontroverted declarations and affidavits of Class Counsel and local attorneys, and the fee agreements in effect with the class representatives.   The Court should disregard the Defendants' meritless objections to the fee petition.  Class Counsel cannot understand how defense counsel can credibly assert that Class Counsel's request for $5.4 million for fees and costs is excessive, when defense counsel spent more than four times the number of hours defending the case as Class Counsel spent prosecuting the claims, and themselves billed

Charter over $7 million in fees and costs.  Class Counsel respectfully requests that the Court grant its petition for attorneys' fees and costs in the full amount requested.

## ARGUMENT AND AUTHORITY

**I.     DEFENDANTS' ASSERTION THAT PLAINTIFFS' REQUEST FOR THIRTY PERCENT (30%) OF THE $18 MILLION COMMON FUND FOR ATTORNEYS' FEES AND COSTS IS EXCESSIVE IS MERITLESS, PARTICULARLY IN LIGHT OF THE FACT THAT DEFENDANTS' COUNSEL BILLED CHARTER OVER $7 MILLION ON THE SAME CASE.**

Defense Counsel asks the Court to reduce Class Counsel's petition for attorneys' fees and costs on the grounds that the request is excessive.  Class Counsel is seeking from the common fund, pursuant to the market approach, which is favored by the Seventh Circuit in this type of case, approximately $5,275,000 in attorneys' fees and $125,000 in costs, or a total of $5.4 million (30% of the $18 million common fund).  Defendants' position that Class Counsel's fees and costs are excessive is incredible, given the fees incurred by defense counsel in the identical case.  *Stastny v. Southern Bell*, 77 F.R.D. 662, 663 (W.D.N.C. 1978)(appropriate to consider defendants' fees in considering plaintiff's fee petition); *Chicago Professional Sports Limited Partnership v. National Basketball Association*, 1996 WL 66111, *3 (N.D.Ill. 1996)(accord).   Based upon Defendants' attorneys' fees billings, defense counsel recorded over $7.2 million in fees and over $193,000 in costs.  This included fees of the Hogan Lovells US LLP firm ($5,936,958.65), the Sonnenschein firm ($357,570.21), fees for independent contractor lawyers ($854,115.10) and the Stafford firm ($78,221.50).  Additionally, Charter paid $193,011.75 in costs.  Fees and costs totaled $7,419,877.21.  With the discount of $308,959.33, attorneys' fees and costs paid by Charter totaled $7,110,917.88.  This is

$1.7 million more than the amount requested by Class Counsel, who, in stark contrast to defense counsel, were not guaranteed to ever be paid a penny for their efforts.

Significantly, Class Counsel incurred substantial fees and costs in representing the interests of the class in the Charter bankruptcy proceedings.  In the bankruptcy, Charter was represented by separate national counsel.  The *Goodell* Class bankruptcy counsel dealt frequently with Charter's national bankruptcy counsel and not with Hogan attorneys, who had been retained by Charter to provide legal advice regarding certain employment matters.  The *Goodell* Class bankruptcy counsel performed significant work in the bankruptcy proceedings including not only briefing the estimation motion and a class certification motion, but also paid close attention to all court filings (such as the plan for reorganization) in order to ensure that the *Goodell* Class was protected as much as possible given Charter's immense debt that forced it into bankruptcy in the first place. Moreover, Class Counsel succeeded in ensuring that the *Goodell* Class' claims would "pass through" the bankruptcy, so that they could be fully litigated once Charter emerged from its reorganization.  Class Counsel traveled to and attended bankruptcy proceedings in the Southern District of New York in order to accomplish this.  Ultimately, Class Counsel was successful in protecting the interests of the class, such that their claims emerged from bankruptcy without being further compromised.  Significantly, Charter never responded to either the estimation or certification motions and therefore did not incur these fees and costs.  Contrary to Defendants' contention, it was far from clear, until the parties negotiated an agreement that the *Goodell* Class' claims would simply pass through bankruptcy and be further litigated in the district court.  Based upon advice by the *Goodell* Class' bankruptcy counsel, the fees and costs expended in the bankruptcy

proceedings by Class Counsel were necessary to adequately protect the interests of the Class.

In sum, Charter's attacks on Class Counsel's request for $5.275 million in fees and $125,000 in costs as excessive is meritless where defense counsel billed over $7 million in fees and costs, and had less work to do.

Defendants also characterize Class Counsel's <u>hours</u> as excessive.  Class Counsel, including attorneys, paralegals, law clerks and other legal professionals, devoted approximately 5,000 hours to the *Goodell* litigation.   The Hogan firm alone spent approximately 16,000 hours on the same litigation. (Dunn Affidavit, para. 28)   In addition to the Hogan hours, Charter also paid contract attorneys, Stafford attorneys, and Sonnenschein attorneys a total of $1,289,906.81.   Totaling these additional amounts and dividing by a blended rate of $300 per hour yields 4300 hours of work in addition to the Hogan's firm's 16,000 hours, or a total of approximately 20,300 hours.  Accordingly, Class Counsel spent less than 25% of the hours spent by defense counsel litigating the same case.  Defendants' contention that Class Counsel's hours are excessive, when compared to hours spent by defense counsel, is, at best, disingenuous.  What possible incentive would Class Counsel have had to "run up the meter" by devoting unnecessary time to a case where the request for attorneys' fees would be made on a contingent fee basis?  Class Counsel devoted the hours they devoted for one purpose – to protect and advance the interests of the Class.

Defendants argue that a significant portion of defense counsel's hours and fees was spent responding to discovery.  In fact, defense counsel, in affidavit testimony, claims that 75% of the total hours spent by Hogan attorneys (or 12,000 hours) was

incurred responding to written discovery. (Dunn Declaration, para. 28).  Additionally, all hours billed by the Sonnenschein firm and the contract attorneys appear to be devoted to responding to discovery. (Dunn Declaration, para. 27)  This totals 4,039 hours, dividing the $300 per hour blended rate into the total fees paid by Charter to Sonnenschein firm and contract attorneys.  The combined hours of Hogan and other attorneys, allegedly spent in responding to discovery, is 16,039 hours or 79% of the total hours claimed. Charter acknowledges that it never produced a single document in discovery even though it allegedly spent over $5.4 million responding to the written discovery.  In the same breath, Charter accuses Class Counsel of being "inefficient."

Defendants' argue that one of the reasons that Class Counsel's fee request is excessive is because approximately 83% of the discovery requests in the *Goodell* case were duplicative of those in the *Sjoblom* case. (Dunn Declaration, para. 14(b) and (c)).  In the *Sjoblom* case, unlike *Goodell*, Defendants produced in excess of one million pages of documents before settling the case.   It is remarkable for defense counsel to contend that 83% of the *Goodell* discovery was identical to the *Sjoblom* discovery and at the same time claim that the Defendants spent $5.4 million responding to this identical discovery. The suggestion that Class Counsel's total fee request of $5.275 million is excessive is preposterous when one considers that Defendants spent more than $5.4 million responding to discovery which, in large part, had already been responded to in *Sjoblom*.

Throughout Defendants' response brief, Defendants repeatedly claim that the *Goodell* case was a *Sjoblom* "copycat" case and, therefore, that minimal work was needed to litigate the case.  This position is inaccurate for several reasons.  First, if the *Goodell* case was simply copycat litigation, this would be true for both Plaintiffs and

10

Defendants. All work performed by defense counsel in the *Sjoblom* case, including pleadings, research on defenses, and discovery should have been easily transferable to defending the second action. If Class Counsel's request for $5.4 million in fees and costs is excessive, then Defendants' $7.2 million in fees and costs is grossly excessive. Similarly, if Class Counsel's 5,000 hours is excessive, then Defendants' 20,300 hours is wildly excessive.

Defendants' "copycat" mantra is also belied by the fact that, throughout the *Goodell* litigation, defense counsel affirmatively represented to the Court and to Class Counsel that these two cases were different. Defendants included the following language in the Preliminary Pretrial Report:

> Defendants contend that the *Sjoblom* matter is not related to the present matter, since this case involves an entirely different group of employees, involves claims brought only under the state laws of eighteen states, none of which was at issue in *Sjoblom* and there is no federal claim in the First Amended Complaint, as there was in *Sjoblom*. The legal issues, factual issues and scope of appropriate discovery therefore are entirely different.

(Dckt. #9) From the first conversation with Class Counsel, Defense counsel stated the two cases were completely different. Defense counsel initially refused to even consider allowing Class Counsel in the *Goodell* case to use the documents Charter had produced in the *Sjoblom* case. Clearly, when they believe it is in Charter's interests, Defense counsel have no hesitation in representing to the Court and to Class Counsel that the two cases are completely different. The Court should not permit Defendants to take inconsistent positions to gain an advantage in opposing Class Counsel's fee petition. Charter should be judicially estopped from taking such inconsistent positions here. *Cooper v. Eagle River Memorial Hosp., Inc.*, 270 F.3d 456, 462 (7th Cir. 2001); *In re Cassidy*, 892 F.2d

637, 641 (7th Cir. 1990)(the purpose of judicial estoppel is to preserve the integrity of the judicial system and prevent litigants from playing "fast and loose" with the courts).

Defendants have a direct financial incentive for challenging Class Counsel's fee petition.  Under the terms of the Settlement Agreement, 85 cents of each dollar not claimed by a class member reverts to Charter.  On the other hand, every dollar that goes to Class Counsel is a dollar that Defendants cannot recoup.  Defendants' objection to Class Counsel's fee petition is simply an effort by Defendants to return as much money as possible from the settlement back to Charter.  Charter failed to properly pay wages and overtime to its employees, resulting in both the *Sjoblom* and *Goodell* cases being filed with this Court. Charter is certainly not looking out for the interests of the *Goodell* class members in opposing Plaintiff's fee petition.  The Court should not reward Charter under the reversion provision in the Settlement Agreement by reducing Plaintiffs' fee petition.

Defendants are also factually and legally wrong when they claim that the *Sjoblom* and *Goodell* cases are "carbon copies" of one another.  As the Court knows, having presided over both cases, the *Sjoblom* litigation was an FLSA collective action that included a Wisconsin State law wage and hour claim.  The *Sjoblom* case was conditionally certified by the Court.  The parties' primary efforts in the *Sjoblom* litigation were directed toward the FLSA claim at the time the parties settled the matter.  The parties had completed the opt-in process but they had begun briefing the Rule 23 class certification of the state wage and hour claims when the case was settled.

The *Goodell* case, on the other hand, has no FLSA claim.  Rather, it was brought under the wage and hour laws of a number of states.  Class Counsel researched the wage and hour laws of various states and contacted numerous putative class members in these

12

states to make certain that the elements of commonality and typicality existed. Oddly, Defendants attack Class Counsel for contacting putative class members. Such communications are, of course, appropriate and necessary. The *Goodell* case involved a number of jurisdictional standing and venue issues not presented in the *Sjoblom* case that Class Counsel investigated and researched. Defendants filed multiple motions in the *Goodell* case that required thorough legal analyses and briefing in opposition. For example, Defendants filed two motions to transfer to which Class Counsel responded. Defendants filed motions challenging the standing of class representatives to serve in this capacity on behalf of class members from other states. Defendants also filed a sanctions motion that Class Counsel believes was without merit, but, nonetheless, required a thorough investigation and the preparation of a detailed response.

Defendants' own motion practice was responsible for a portion of the fees that Defendants now claim are excessive. As all appreciate, the *Goodell* lawsuit is a large class action where damages were in the tens of millions of dollars. Litigation of such a case requires a team of legal professionals taking those necessary and appropriate steps to protect the rights of a significant number of class members. In the present case, the class size is 3,608. Significant litigation requires significant efforts. Class Counsel does not accuse defense counsel of over billing their client for work necessary to defend this matter, but find it offensive that Defendants accuse Class Counsel of seeking excessive fees and costs, where Class Counsel's requested fees are substantially less than those billed by Defendants' counsel.

In summary, Defendants' contention that Class Counsel's fee request is excessive is meritless. Class Counsel's fee request is significantly less than the fees incurred by

Defendants in defending the same case, and Class Counsel have the burden of actually proving the case. Relatedly, the number of hours expended by Class Counsel is less than 25% of what defense counsel spent defending the same case. Defendants claim that this is a copycat of the *Sjoblom* case, yet they spent $7.2 million defending the case and repeatedly advised the Court and Class Counsel that the two cases were not similar. Finally, as noted above, the legal and factual issues in the two cases are not identical. The Court should reject Defendants' challenge that Class Counsel's request for thirty percent (30%) of the common fund is excessive.

## II. UNDER CONTROLLING MARKET RATE ANALYSIS, THIRTY PERCENT (30%) OF THE COMMON FUND IS AN APPROPRIATE AMOUNT TO BE AWARDED FOR CLASS COUNSEL'S FEES AND COSTS.

Defendants claim that the Court should use the lodestar method to calculate Class Counsel's fees. Although the district court has discretion in awarding attorneys' fees, the Seventh Circuit has explicitly stated that the preferred method is to award a percent of the common fund. The Seventh Circuit has repeatedly held when setting fee awards in common fund cases, the court's task is to award an amount consistent with the normal market rate at the inception of the case, factoring in the risk of nonpayment. *See In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998); *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245 (7th Cir. 1995); *Florin v. Nationsbank of Geogia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *In re Continental Securities Litigation*, 985 F.2d 867 (7th Cir. 1993); *Matter of Continental Securities Litigation*, 962 F.2d 566 (7th Cir. 1992); *Taubenfield v. AON Corp.*, 415 F.3d 597, 598 (7th Cir. 2005); *Sutton v. Bernard*, 504 F.3d 688, 692-93 (7th

14

Cir. 2007).  Notably, Defendants have not articulated a principled reason for deviating from this well-settled practice.

In its petition for attorneys' fees and costs, Class Counsel requests thirty percent (30%) of the common fund of $18 million.  Class Counsel provided case law and other authority indicating that a thirty percent (30%) contingency is common for this type of case.  Defendants provided no contrary authority.  Instead, Defendants argue that the present case is exceptional because of alleged similarities to the *Sjoblom* litigation,[3] and therefore, based on nothing more than Defendants' opinion, the fee should be reduced to 12%.  Curiously, Defendants seek to have this Court set the fee award based on Defendants' subjective judgment as to what an appropriate fee percentage is.  This is exactly the type of subjectivity the Seventh Circuit has criticized when district courts arbitrarily reduce fees without reference to evidence of market rates.  *Continental I*, 962 F.2d at 568-69 ("The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays **not for the individual hours** but for the ensemble of services rendered in a case of this character.")

The *Sjoblom* and *Goodell* cases are not "copycat" lawsuits.  If the two cases were the same, Defendants have not explained why their attorneys billed over $7 million in fees and over 20,000 hours defending this case while representing to opposing counsel and the Court that the two cases were completely different.  These were different cases with many distinguishing features.

---

[3] As noted above, this "copycat litigation" contention is meritless.  If the two cases were the same, Defendants have provided no reasonable explanation why Defendants counsel billed over $7 million in fees and over 20,000 hours.

Class Counsel has submitted multiple declarations and affidavits from attorneys who regularly practice before this Court in these types of cases.   The affidavits consistently establish that, under the required market approach, a thirty percent (30%) contingency is an appropriate market rate.   These declarations and affidavits are uncontested.  Defendants have submitted no affidavits from practitioners in this market challenging the thirty percent (30%) rate as being anything other than a proper rate under the market approach.  Defendants did not depose or otherwise challenge the opinions of Class Counsel and supporting local attorneys that a thirty percent (30%) contingency is the appropriate market rate.  The declarations and affidavits supporting Class Counsel's petition for fees are uncontroverted.

In determining the appropriate attorneys' fee in a common fund case, like the present case, courts look at what the market rate is for the type of case.  Case law, as well as the uncontroverted declarations and affidavit testimony, establish that the appropriate market rate is thirty percent (30%) of the common fund.  This is consistent with two studies conducted by the Federal Judicial Center.  A 1996 study of more than 400 class action settlements from 4 Districts found the median fee awards to be from 27-30%. Thomas Willging et al., *Empirical Study of Class Actions in Four Federal District Courts*, 69, 73 (1996).  A similar study of more than 600 cases in 2005 found the median fee award to be 29%.  Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*, 52 (2005).  In addition, this Court has approved a 33 1/3% fee request in an FLSA collective action where the settlement created a common fund.  *See Kelly et. al., v. Bluegreen Corporation*, 08-CV-401; Docket #'s 141, 151.

For the foregoing reasons, this Court should award Class Counsel 30% of the common fund for their reasonable costs and attorney's fees in this case.

### III.   THE COURT SHOULD REJECT DEFENDANTS' ADDITIONAL ARGUMENTS CHALLENGING CLASS COUNSEL'S PETITION FOR FEES AND COSTS.

In addition to Defendants' primary arguments, which are addressed above, Defendants offer a number of additional challenges to Class Counsel's petition for fees and costs. First, Defendants suggest that they are opposing Class Counsel's fee request to protect the interests of class members and to maximize the class members' recovery. This argument is not credible. Defendants have one reason for opposing Class Counsel's fee petition that has nothing whatsoever to do with the well being of the class members. Rather, Charter is only looking out for itself. Under the Settlement Agreement, 85 cents of each dollar that is unclaimed by class members is returned to Charter. Charter potentially benefits when any dollar requested for fees and costs is moved into the pool to pay claims. It is curious that the company which settled two wage and hour lawsuits for a combined total of $46.5 million for failure to properly pay wages and overtime to its employees, is now concerned that its current and former employees are treated fairly. The reason for Charter's opposition to the fee petition is crystal clear—to maximize Charter's recovery under the reversion portion of the settlement. The class members have nothing to do with it.

Second, Charter suggests that Class Counsel took no risk in pursuing this case. This is flatly absurd. In August 2008, when this case was commenced, Charter's financial condition was perilous. There were continuous news stories quoting reputable financial consultants regarding Charter's poor financial condition and the likelihood of

17

bankruptcy.  As we all know, the fear of bankruptcy, in fact, materialized.  Charter's financial condition was so worrisome in early July, 2008, when the parties settled the *Sjoblom* case, that Class Counsel demanded a letter of credit as security for Charter's financial obligations under the terms of the *Sjoblom* Settlement Agreement.

Charter, with the benefit of hindsight, now suggests that the bankruptcy was essentially a formality and that Class Counsel had no financial risk.  This after-the-fact argument is contrary to all facts and reports at the time Class Counsel initiated the *Goodell* action.  This risk of nonpayment, although perhaps foreign to defense counsel who are routinely guaranteed to be paid by the hour, is very real to attorneys who must decide if they are going to dedicate thousands of hours of time, and potentially hundreds of thousands of dollars in out of pocket expenses, to a case that is fraught with risk. Accordingly, Attorneys Urban and Parsons stated in their Declarations that they too would have strongly considered the rumored bankruptcy in deciding whether or not to even pursue this case.

In addition to financial risks, Class Counsel faced risks related to defenses in this case, including ECFA and the Motor Carrier Act.  While there is not an abundance of law in the Seventh Circuit under either defense, there were substantial risks that these defenses could potentially impact both class certification as well as the merits of the Plaintiffs' claims.

Defendants suggest that Class Counsel should have known that Charter would settle the *Goodell* case because it settled the *Sjoblom* case.  The *Sjoblom* case settled, in large part, due to the posture of the case.  As the Court will recall, Defendants failed to meet their legal obligations on a number of discovery and other issues and a sanctions

motion was pending before the Court.  These same circumstances did not exist in the *Goodell* case.  Class Counsel had every reason, particularly based on Defendants' motion practice and communications between Class Counsel and defense counsel, to believe that Charter intended to aggressively defend this case.  As the lawyers for a large class of employees, Class Counsel had no choice but to properly prepare the case as if it would proceed all the way to trial.  Moreover, it is important to recall that counsel for Charter billed $7.2 million in fees and costs in defending this case.  If Class Counsel should have known that the case was going to settle, defense counsel certainly should have known this as well and not incurred over $7 million in legal fees.

Finally, Charter attacks Class Counsel in opposing Class Counsel's attorneys' fees and costs.  Defendants contend that Class Counsel did not obtain a good result on behalf of class members where the average class member will receive approximately $3,500 in cash, half of which will not be subject to payroll taxes (i.e. FICA, FUTA, and Medicare).  Based on results in other large wage and hour class actions, this is an excellent result on behalf of class members.  Despite its earlier efforts to distinguish the two cases, Charter now attempts to compare the settlement results in *Goodell* to those in the *Sjoblom* class action.  As all are aware, the *Sjoblom* case settled in the face of potential substantial sanctions against Charter and its counsel.  The posture of the two cases are dissimilar.  When compared to other wage and hour class actions, the result in the *Goodell* case is excellent.  Nearly twenty percent (20%) of the class is receiving the maximum payout of $5,163.60.

Defendants, based purely on speculation, also accuse Class Counsel of billing time in the *Goodell* case for work done in the *Sjoblom* case.  Class Counsel billed no time

to the *Goodell* case for work done in the *Sjoblom* case.  Such unfounded accusations, which suggest that Class Counsel acted unethically in their billings, are unprofessional and offensive.

Finally, Charter accuses Class Counsel of "rampant inefficiencies" because they spent approximately 5,000 hours in successfully litigating this case on behalf of the class. This argument cannot be squared with the fact that Defense counsel spent more than four times that number of hours defending the same case.  When these two numbers are compared, it is clear that Class Counsel was highly efficient in litigating this case.  It is disingenuous for Defendants to suggest otherwise.

In sum, the Seventh Circuit has explicitly held that the market approach applies to common fund cases, such as this.  Despite every effort to divert the Court from this well-settled approach, Defendants offer no principled basis for applying the "lodestar" method or accusing Class Counsel of being inefficient when their own attorneys spent far more time litigating this case.  Defendants have represented to this Court and Class Counsel that *Sjoblom* is not a comparable case, only to now claim that they are "copycats" of one another.  Defendants have vigorously resisted efforts to pay overtime compensation in both *Sjoblom* and *Goodell*, only to now claim that they are trying to protect the class members from the very attorneys who successfully resolved both cases on their behalf. Such inconsistent posturing should be rejected by this Court.

For these reasons, and those stated above, Class Counsel would respectfully request that this Court apply the market approach and award to Class Counsel, as fees and costs in this matter, thirty percent (30%) of the $18 million common fund.

## <u>CONCLUSION</u>

On the basis of the argument and authority and the relevant facts set forth in the various pleadings and affidavits in support of Class Counsel's petition for attorneys' fees and costs, Class Counsel respectfully requests that the Court award to Class Counsel, as fees and costs in this matter, thirty percent (30%) of the $18 million common fund.

Respectfully submitted this 21st day of July, 2010.

GINGRAS, CATES & LUEBKE, S.C.      AXLEY BRYNELSON, LLP

/s/ _____      /s/ Michael J. Modl _____

Robert J. Gingras                            Michael J. Modl
Michael J. Luebke                        John C. Mitby
Attorneys for Plaintiff                 Steven S. Streck
8150 Excelsior Drive                  Timothy D. Edwards
Madison, WI  53717-1904          Attorneys for Plaintiff
(608) 833-2632                         2 E. Mifflin St., Ste. 200
gingras@gcllawyers.com           Madison, WI   53703
luebke@gcllawyers.com            608-257-5661
                                        mmodl@axley.com
                                        jmitby@axley.com
                                        sstreck@axley.com
                                        tedwards@axley.com